## Richard Brown v. The State.

No. 15152.   Delivered April 27, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 616.

The opinion states the case.

*Cedric Taylor,* of Wichita Falls, *B. W. King,* of Graham, and *E. G. Thornton,* of Olney, for appellant.

*Sam B. Spence,* District Attorney, and *Geo. W. Anderson,* Asst. District Attorney, both of Wichita Falls, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, robbery with firearms; the punishment, death.

Appellant was indicted by the grand jury of Wichita county, Texas, for robbery with firearms of one Vera Smith, and upon the trial in Young county was convicted and the death penalty assessed.

The testimony of Miss Vera Smith, briefly stated, was as follows: That she resided in Wichita Falls, Texas, and was 24 years old, and had resided in Wichita Falls for five years; that upon the evening of September 9, 1931, she and her fiance, A. N. Nodurft, went over to visit a cousin who lived in the same town; that after they had stayed there about an hour they left and started home; that they stopped their car on a little-traveled road in the southwestern part of the city, and while thus parked she turned around and saw two black forms approaching the car from the rear; that they had the car lights turned off while they were sitting there and the motor was also turned off, and when they saw these two black forms approaching, her companion tried to start the car, but could not get it started right away on account of a faulty key, and as he was trying to start the car the two persons came around to her side of the car and told him not to start the car; that when they approached the car, she saw that they were negroes; that they both had guns in their hands at the time; that it was the older negro of the two who told her companion not to start the car, but that he did not stop his attempt to do so; whereupon, the older negro fired one shot at her companion and the younger negro was standing by the other one at the time; that after the shot was fired, her

companion said, "I have been shot, they got me, kiss me," and she kissed him; that the older negro opened the door of the car and the younger negro had gone around to the side of the car where her companion was. Upon the command of the older negro, she got out of the car; that he still had his gun in his hand and she also saw the younger negro with his gun; that after she got out of the car, the older negro forced her to go behind the car and the younger negro remained at the car; that the older negro told her, "Give me that ring," and she took the ring off of her finger and gave it to him; that it was her engagement ring and she gave it to him because he had his gun on her and she was afraid he would kill her or shoot her; that the younger negro then came up to where they were, and at the time the older negro was getting her ring the younger negro was at the car getting the money off of her companion, who was still in the car; that when the younger negro came up to the place where the older negro and she were, they took her to a place about half-way between the car and the railroad tracks and they compelled her to lie down on the ground, and both had their guns at the time; that after she had laid down on the ground, she was assaulted by both negroes, and while she was lying on the ground her watch was taken from her by the older negro; that she let them take her watch because she was afraid they would kill her if she didn't; that they jerked it off of her wrist.

The evidence showed that A. N. Nudorft died from the effects of the wound inflicted after being taken to a hospital.

The evidence further showed that subsequent to the robbery the engagement ring belonging to Miss Vera Smith was discovered in the possession of a negro woman by the name of Vinnie Strickland, who testified on the trial that it was given her by one Richard Johnson, who was the negro the state's testimony showed to be the larger of the two negroes who committed the alleged offense. The ring was positively identified as being the ring taken from Miss Vera Smith and which was purchased by the said A. N. Nodurft.

Two confessions of the appellant were offered in evidence. In the last one taken, appellant confessed to the offense charged, but said that he did so by reason of the threats and coercion of his companion in the crime.

Bill of exception No. 9 shows that on the trial of the above-numbered cause in Young county and before the announcement of ready, appellant presented to the court a plea to the jurisdiction of the court. The bill shows that the case was transferred from Wichita county to Young county on a change of venue and thereafter an order calling a special term in Young county was entered by the judge of the Thirtieth District Court on October 24, 1931. The main contention of the appellant, as shown by said bill, is to the effect that the regular term of the Thirtieth District Court was in session in Archer county, Texas, and that

such Archer term had not been adjourned and was at that time in session; that there was then two terms in session of the Thirtieth District Court, one in Young county and one in Archer county, and no adjournment for the term was or had been had at the time in Archer county. The bill further shows that the Thirtieth District Court convened in Archer county for its regular November term provided by the statute, and at that time continued for three days, at which time the court was recessed by the judge to reconvene on the 24th day of November, and the Thirtieth District Court of Archer county had been only temporarily recessed from November 4th to November 23, 1930, and at the time of the trial of this case, November 9, 1931, was the regular date set by the court for the convening of the special term in Young county.

The bill further shows that this case was originally filed in the Thirtieth District Court of Wichita county, Texas, which was the same district which holds court in Archer, Wichita, and Young counties, and of which Allan D. Montgomery was the district judge; that he was the same judge who entered the order changing the venue and was then present in Young county for the trial of this cause.

Article 1920, Rev. Civ. St., 1925, provides: "Whenever a district judge deems it advisable to hold a special term of the district court in any county in his district, such special term may be held; and such judge may convene such term at any time which may be fixed by him."

In the case of Wilson v. State, 87 Texas Crim. Rep., 538, 223 S. W., 217, wherein the contention was that the judge of the trial court could not legally preside over the court of two counties of his district at the same time, it was held that special terms of the district court may be called whenever it may become advisable. There being no question but that the district judge in the instant case deemed it advisable, and that he did call a special term of the district court, we can see no reason, if it be admitted that it became advisable to hold said special term in one county during the session of court in another county in the district, why recess or adjournment may not be temporarily had in the latter to allow the transaction of business which makes it advisable for a special term in the other county, and the trial judge violated no rule of the statute by such procedure. Elliott v. State, 58 Texas Crim. Rep., 200, 125 S. W., 568. See, also, Cransby v. State, 115 Texas Crim. Rep., 441, 26 S. W. (2d) 246.

No injury is shown or claimed by the appellant because of the trial of said case at the said special session of the said court. We see no error in overruling appellant's plea of jurisdiction.

Bill of exception No. 2 complains of the admission in evidence of the testimony of the witness Clarence Williams, who lived near the town of Gainesville, as to the appellant having picked cotton for him on the 16th

day of September, and the payment of appellant's wages by check, and the introduction of the check.

Bill of exception No. 2A complains of the state being allowed to prove, over objection of the appellant, by the witness Camme Nero, that she lived in the colored section of the town of Gainesville and knew the defendant, Richard Brown, and she saw appellant at her place of business in Gainesville on the 10th day of September; that he had been gone before that for about seven or eight months, and he asked her for something to eat, and she saw him again some time the next week when he came to her place again and asked for something to eat. The appellant objected to all of said testimony because it was immaterial, and as to that part wherein the state was attempting to show the presence of the defendant in Gainesville and his absence therefrom from time to time was an attempt on the part of the state to bolster up its testimony on an immaterial matter. The state evidently introduced this testimony for the purpose of showing flight of the appellant after the alleged commission of the offense on September 9, 1931. On that issue, the evidence was admissible. "The state may prove the flight or attempted flight of the defendant and the attendant circumstances." Branch's Ann. P. C., sec. 135. See, also, Blake v. State, 3 Texas App., 581; Gose v. State, 6 Texas App., 121; McClendon v. State, 101 Texas Crim. Rep., 128, 274 S. W., 159; Chastain v. State, 97 Texas Crim. Rep., 182, 260 S. W., 172.

Bills of exception Nos. 3, 3A, and 4 complain of errors on the part of the trial court in the admission of two confessions alleged to have been made by the appellant. It appears from the record that after his arrest appellant made two written statements which were introduced against him on this trial. Objections were made to the introduction of said written statements upon the ground that said statements were not in compliance altogether with article 727, C. C. P., and also that all of said statements did not pertain to or were confessions of and concerning the offense for which the defendant stood charged, to-wit, robbery with firearms. The opening paragraph of one of said confessions is as follows: "After I have been duly warned by Ge. W. Anderson, assistant district attorney, that I do not have to make any statement at all, and that any statement I make may be used in evidence against me on the trial for the offense concerning which this statement is herein made, I wish to make the following voluntary statement to the aforesaid person."

The opening paragraph of the other statement is identically the same, except that the second statement showed that the warning was given by one Mike Anglin, assistant district attorney, and was made to him. Oral evidence was also heard as to whether said statements were freely and voluntarily made. Both of said alleged confessions showed to have been signed by the appellant himself in the presence of witnesses, and the evidence shows that they were freely and voluntarily given. The record

shows that that part of the confession wherein a statement was made with reference to the making of beer on the part of Richard Johnson was not offered by the state upon the objection of the appellant. The fact that in the confessions appear testimony and statements material to more than one offense would not of itself serve to reject it as inadmissible in this case as it is part of the same offense. Johnson v. State, 67 Texas Crim. Rep., 95, 149 S. W., 190; Phillips v. State, 102 Texas Crim. Rep., 195, 277 S. W., 679; Coomer v. State, 97 Texas Crim. Rep., 100, 260 S. W., 568; Branch's Ann. P. C., sec. 61.

It appears from bill of exception No. 5 that after the jury had been out from about 4:10 p. m. on Monday until about 9:10 the next morning, the jury sent word to the court by the bailiff that it had a question they desired to ask the court, whereupon the jury was brought into open court and presented in writing the following question: "In arriving at a decision as to the penalty of the defendant is the jury to consider all of the circumstances of evidence leading up to this crime as charged in the indictment, and if not what part should be excluded?

The court then prepared the following answer to said question, furnishing the same to defendant's attorney before the same was read to the jury: "Gentlemen of the Jury, in reply to your question in writing presented in open court in the presence of the defendant, you are instructed that should you find the defendant guilty of robbery with firearms, as is fully set out in paragraphs 5 and 6 of the court's main charge, that you may, in that event, take into consideration all of the evidence admitted by the court on the trial of this case in assessing the penalty as named."

The appellant excepted to said charge for the reason that it was in violation of the statutes, the court having already, as required by law, charged the jury the law and having fully set out the rights of the jury in the consideration of the case, and that the same is a charge upon the weight of the evidence and informs the jury of a situation already covered. The appellant, in his brief, contends that the effect of said charge is: Should the jury find the defendant guilty of robbery with firearms, that they might, in that event, take into consideration all the evidence admitted by the court on the trial in assessing the penalty as named, and that this permitted the jury to take into consideration proof of separate, distinct, and extraneous crimes. We think the court properly admitted in evidence the testimony concerning the shooting of Nodruft, the robbery of Nodurft, and the rape of the witness Vera Smith. The evidence reveals that all of said acts were part of the res gestae of the offense for which appellant was on trial, and were for consideration upon any phase of the case. The opinion is expressed that the jury in determining the amount of punishment to be assessed against appellant had a right to consider all of the circumstances in evidence which was admitted as part of the res gestae, and that the court was not in error in so charging the

jury in answer to the question asked the court by the jury. See Jarman v. State, 112 Texas Crim. Rep., 239, 16 S. W. (2d) 130; Arcos v. State, 120 Texas Crim. Rep., 315, 29 S. W. (2d) 395.

By bill of exception No. 6, appellant complains of the action of the trial court in sustaining the state's objection to the following question propounded to the witness Perry Browning while on the witness stand: "Isn't it true that on that occasion that the defendant said in the presence of all of us in refusing to talk to anybody that it was because he was afraid of the other negro." The record shows that said testimony asked about was not made at the time when any confession was being taken of the appellant. The evidence further shows that it was not part of the res gestae. The record shows that the assistant district attorney testified without objection that at the time the confession was taken of the appellant that the appellant made one statement of fear, "He said he was afraid of Bob." That the man Bob he said he was afraid of was the negro who had been identified by these statements as Bob Pope or Johnson. The record further shows that it was not part of a conversation or statement introduced by the state on the same subject. We think there was no error on the part of the trial court in sustaining the state's objection to said declaration of the appellant on the occasion inquired about as being a self-serving declaration. We quote from Branch's Ann. P. C., sec. 90: "Proof of declarations made by defendant in his own favor after the alleged offense was committed is not admissible for him, unless part of the res gestae or unless admissible to explain an act, confession, or conversation offered by the state, or unless it is part of the conversation or statement introduced by the state and on the same subject." See, also, Chant v. State, 73 Texas Crim. Rep., 345, 166 S. W., 514; Cyrus v. State, 74 Texas Crim. Rep., 437, 169 S. W., 679; Smith v. State, 46 Texas Crim. Rep., 284, 81 S. W., 936, 108 Am. St. Rep., 901.

Bill of exception No. 7 complains of paragraph 5 of the court's charge because same was restrictive and charges upon the theory of principals when the facts in said cause do not raise such an issue of fact. The evidence of the state's witness, Vera Smith, clearly shows that the appellant and one Richard Johnson were both present and acted together in the commission of the offense, and the court was authorized to charge on the law of principals under said evidence.

The bill of exception also shows that the appellant objected and excepted to paragraph 6 of the court's main charge in that it fails to limit and restrict the evidence with reference to the commission of other crimes, and that the court should have instructed that the evidence as to other crimes could not be considered in determining the guilt or innocence of the defendant or in determining the punishment to be assessed against defendant in this case on trial at this time. This contention has been disposed of in the discussion of bill of exception No. 5.

Bill of exception No. 8 also is disposed of in our discussion of bill of exception No. 5.

Appellant also complains of the refusal of the trial court to give his special instructions to the jury to disregard certain portions of the district attorney's argument to the jury. We do not consider that the argument complained of in this case showed such prejudice to the rights of the appellant, under the evidence, that the refusal of the court to instruct the jury to disregard it would call for a reversal of the case. "The facts' and surroundings of a particular case should be looked to in determining. the effect of argument complained of. The same language under a certain state of facts might be highly prejudicial and not so regarded under other circumstances." See Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, 9 S. W. (2d) 358, 60 A. L. R., 290; McKenzie v. State, 116 Texas Crim. Rep., 395, 11 S. W. (2d) 172.

We have carefully examined and considered all the evidence in the case and believe that it amply supports the conviction.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The offense, if any, was committed September 9, 1931, in the city of Wichita Falls, Texas. The state properly proved that appellant had picked cotton for Williams near the town of Gainesville, in Cooke county, Texas, on September 16, 1931; that he was paid by check, which was introduced in evidence; also by a negro woman who lived in the town of Gainesville that appellant came to her place of business on September 10, 1931, after an absence of seven or eight months. Appellant's immediate departure from the city in which the offense was committed for another locality some distance removed from the scene of the crime might lead to the conclusion that he was conscious of guilt. We quote from Texas Jurisprudence, vol. 18, p. 41: "The flight or attempted flight of a person after the commission of a crime, while not of itself sufficient to raise a presumption of guilt, is a circumstance which is to be considered by the jury in connection with all the facts and circumstances in the case as tending in some degree to prove a consciousness of guilt."

Further, we quote from the same text as follows: "In proving the flight of the accused it is competent to show that soon after the crime he left the county or the state, and that a letter written by him showed that he was a fugitive."

See Henry v. State (Texas Crim. App.), 43 S. W., 340. See, also, other cases collated on page 42 of vol. 18, Texas Jurisprudence.

The opinion is expressed that the testimony in question was also admissible under the rule that evidence to show that an accused has attempted to fabricate or procure false evidence is always admissible as showing a consciousness of guilt. Underhill on Crim. Evidence (3rd Ed.), sec. 207. See Wharton's Criminal Evidence, vol. 2 (10th Ed.), p. 1753; also, Faulkner v. State 104 Texas Crim. Rep., 378, 283 S. W., 824, 827. In this case Judge Hawkins said:

"It is always admissible to prove as a circumstance of guilt that an accused has fabricated or attempted to fabricate testimony. * * * It is apparent appellant was seeking to fabricate the defense of an alibi which was to culminate in the testimony of Parker placing him at home at the time of the robbery, preceding it with the statement that he left Franklin going toward home on the Tuesday in question. Under the circumstances it does not appear to be debatable that the state had the right to make the proof offered through the witness Cox and to follow it by showing that the statement then made was untrue. The state had a right to show by Parker that appellant had made an effort to induce him to testify upon trial to facts which were not true, and also to prove that appellant in fact did not leave Franklin at the time and in the manner claimed by him." See, also, Baines v. State, 43 Texas Crim. Rep., 490, 66 S. W., 847, and Kline v. State, 78 Texas Crim. Rep., 609, 184 S. W., 819.

Shortly after his arrest appellant made a written voluntary statement, after proper warning, in which he stated, in effect, that at the time the offense was committed in Wichita Falls he was in Gainesville picking cotton for Clarence Williams, for which he received a check for $1.34; that shortly after receiving this check he met a girl on the Katy tracks in Gainesville and "got a little piece from her," giving her fifty cents. This statement was made on September 19, 1931. It is apparent that, if believed, it exculpated appellant by placing him in the city of Gainesville at the time the offense was committed in Wichita Falls. After making the foregoing statement, appellant made another confession in which he admitted that he was present at the time the offense was committed and participated therein. He declared, however, in this confession that he had participated in the commission of the offense on account of fear of his codefendant Richard Johnson, who threatened him. The two confessions were introduced in evidence by the state. The court instructed the jury, in substance, to acquit appellant if they believed his codefendant, Johnson, threatened him, and that he (appellant) was induced to aid Johnson in the commission of the offense because of the fact that he believed he was in danger of death or serious bodily injury at the hands of Johnson. The burden was on the state to disprove the exculpatory

statements contained in the confession relied upon to establish appellant's guilt; it being the rule that where the state introduces in evidence and relies for conviction upon the confession of the accused, and such confession contains exculpatory statements, the state is bound by the whole confession and the burden rests upon the state to show that the exculpatory statements were untrue. Branch's Annotated P. C., sec. 73; Menefee v. State, 67 Texas Crim. Rep., 201, 149 S. W., 138, 141; Combs v. State, 52 Texas Crim. Rep., 613, 108 S. W., 649. Proof of circumstances showing a consciousness of guilt on the part of appellant was admissible as tending to show that the exculpatory statements in his confession were untrue. In an effort to prove a consciousness of guilt, it was proper for the state to introduce the witnesses Williams and the negro woman for the purpose of proving that appellant was in Gainesville on the farm of the witness Williams and at the place of business of the negro woman soon after the offense had been committed in Wichita Falls, and that he was not there at the time of the commission of the offense, as stated by him in his first confession. This proof was within the rule that it is admissible to prove, as showing consciousness of guilt, that an accused has fabricated or attempted to fabricate testimony. And it was proper for the state to introduce the declarations contained in appellant's confession touching his presence in Gainesville at the time the offense was committed, and to thereafter bring the witnesses to show that such declarations were false.

It appears that the statement in which appellant declared that he was in Gainesville at the time the offense was committed embraced the following declaration: "I saw a girl named Lorene on the Katy tracks and got a little piece from her on the Saturday night after I picked cotton (last Saturday night). I gave her fifty cents." This statement was a part and parcel of the declarations appellant made in an effort, when first arrested, to establish an alibi. Appellant objected to the statement on the ground that it showed a separate and distinct offense. We do not think it discloses the commission of a separate offense. At most it would only seem to involve an act of immoral conduct. Be that as it may, it was a circumstance so interwoven with the declarations contained in the confession touching appellant's effort to establish an alibi that it was proper to go before the jury as one of the circumstances bearing on the question of an attempted fabrication of a defense.

We think we properly made disposition of appellant's bill of exception No. 6. We deem it unnecessary to further discuss the question presented by said bill.

Appellant insists that we were in error in holding that the arguments shown in his special charges were not erroneous and prejudicial. No objections to the remarks of the district attorney are brought forward in the bills of exception. This court has committed itself to the proposi-

tion that ordinarily objection to the argument must be made at the time it occurred in order that the attorney making the argument may, if he sees fit, withdraw or explain it. This rule has been applied in cases in which the death penalty has been assessed. Riles v. State, 117 Texas Crim. Rep., 479, 38 S. W. (2d) 342. Supporting the rule, see Sears v. State, 106 Texas Crim. Rep., 219, 291 S. W., 547, 548; Ross v. State (Texas Crim. App.), 7 S. W. (2d) 1078; Harris v. State, 93 Texas Crim. Rep., 544, 249 S. W., 485. In Sears v. State, supra, it was said: "Unless objection to argument is called to the court's attention at the time the objectionable statements are made, they cannot ordinarily be taken advantage of by later complaint." Moreover, this court has held that the bill of exception must show that such argument was in fact made. French v. State, 99 Texas Crim. Rep., 429, 269 S. W., 786.

The first special charge reads as follows: "You will not consider the argument of the district attorney in closing when he said 'Send him to Huntsville for life, and then let him some day walk out of the pen doors a free man and start on his career of crime.'" There is a notation on this requested charge to the effect that it was presented to the judge before the jury retired, and refused.

The next requested charge reads as follows: "You will not consider for any purpose the argument of the district attorney in closing where he said: 'We depict to you by the witness a crime the harrow of which this section of the State has never seen.'" This charge bears notation that it was requested before the jury retired, and refused.

Manifestly, neither of the foregoing special charges show that the language set forth was in fact used in the argument of the district attorney. If it should be assumed that the argument was made, the special charges do not show that appellant objected at the time. In Salinas v. State, 113 Texas Crim. Rep., 142, 18 S. W. (2d) 663, the accused was under 25 years of age and had filed an application for suspended sentence. A special charge was presented to the court reflecting that the assistant county attorney, in argument, stated, in effect, that he had rarely ever seen a man apply for a suspended sentence when he was not guilty. This special charge sought to have the jury told that they could not consider such statement. An exception to the refusal of the court to give the requested charge was noted on the charge. In the opinion attention was called to the fact that if it had been shown that objection had been properly made at the time of the remarks, the refusal of the special charge would have been error. However, it was held that it was necessary to bring the matter forward by bill of exception setting out the surroundings, settings, time, and circumstances of the making of the remarks. It is clear that the special charges in the instant case bring forward nothing for review. If we should indulge the presumption that the argument was made and that appellant promptly objected at the time,

we would be of the opinion that the trial court properly refused to instruct the jury not to consider the remarks. It was proper for the district attorney to urge the jury to inflict the death penalty. Moreover, we see nothing improper in advising the jury that the crime committed was, in effect, one of the worst that that section of the state had ever seen. The facts in evidence justified the conclusion that a horrible crime had been committed. Appellant has cited us no case, and we know of none, under facts at all similar to those before us, in which it has been held that remarks of the nature under consideration call for reversal. If the argument should be held to be improper, in determining whether the argument is of such a nature as to be obviously hurtful and prejudicial, the facts and surroundings of the particular case must be looked to. We quote from the opinion on motion for rehearing in the case of Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, as follows: "Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Texas Crim. Rep., 553, 248 S. W., 695; Coates v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891; Vineyard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548." See, also, Arcos v. State, 120 Texas Crim. Rep., 315, 29 S. W. (2d) 395.

The third special charge found in the record reads as follows: "You will not consider for any purpose the argument of the district attorney in closing where he said: 'If you vote for less than the death penalty go home to your daughter and tell her what you have done and she will tell you that she will be ashamed of you.'" The notation on the foregoing special charge shows that it was given. While the remarks contained in the charge last referred to are not approved by this court, we are unable to reach the conclusion that under the facts reflected by the record they should call for a reversal. As far as the record reflects the matter, when it was called to the court's attention the special charge withdrawing the remarks was given. In the light of the evidence before the jury in the present case, the argument in question is not regarded to be of such a nature as to have impaired the rights of appellant. Manifestly the record reflects the judgment of the jury on the facts.

The opinion is expressed that the record in this case discloses that appellant was accorded a fair trial.

The motion for rehearing is overruled.

*Overruled.*